Commonwealth *v.* Brownmiller, Appellant.

Argued March 13 and 14, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, RHODES and HIRT, JJ.

*J. Dress Pannell*, with him *O. K. Eaton* and *H. O. Bechtel*, for appellant.

*Samuel Handler*, with him *Carl B. Shelley*, District Attorney, and *Earl V. Compton*, for appellee.

OPINION BY BALDRIGE, J., July 19, 1940:

The appellant, Roy E. Brownmiller, was indicted March 8, 1939, and convicted June 25, 1939, of misconduct in public office during the time he was Secretary of Highways of the Commonwealth of Pennsylvania. Pursuant to the orders of the Dauphin County Court of Quarter Sessions, an investigation of the conduct of

certain public officials, including Roy E. Brownmiller, was conducted by the September 1938 grand jury. Upon the conclusion of its investigation the grand jury made a presentment to the court of quarter sessions that it found Brownmiller had been guilty of unlawful conduct in his office and recommended that the matters therein reported should be considered by the regular current grand jury.

That was done and the January 1939 grand jury returned an indictment against Roy E. Brownmiller containing three counts. The first count charged him, while Secretary of Highways of the Commonwealth of Pennsylvania having the duty of supervising the expenditure of funds of the Department of Highways and the employment of men necessary for construction, maintenance, and improvement of State Highways, with wilfully and corruptly using the funds of the Commonwealth for political purposes, causing a misuse and waste of such funds by authorizing and directing their unlawful expenditure in Luzerne County in the amount of $600,000 and upwards.

No reference need be made to the second count, except to state that the court at the trial directed the jury to return a verdict of not guilty as to that count.

The third count charged Brownmiller, acting in his official capacity, with having knowledge of this waste and misuse of funds of the Highway Department in Luzerne County and with wilfully, corruptly, unlawfully, and maliciously failing, neglecting, and refusing to perform the duties of his office by investigating the cause of such wastes and expenditures, and terminating the same, but on the contrary, permitted such wastes and expenditures to continue.

On May 4, 1939, a motion to quash the indictment was presented to Judge HOWARD W. HUGHES, specially presiding in Dauphin County, alleging that there were present during the taking of the testimony by the in-

vestigating grand jury unauthorized persons, including Earl V. Compton, Esq. and David Putney, Esq., unlawfully designated and appointed assistants to the district attorney by the court of quarter sessions, who participated actively in the interrogation of witnesses, reviewed and called the attention of the grand jury to the testimony, and advised them of the law applicable thereto, thus influencing them in their deliberations and actions.

The defendant also assigned for reasons in support of his motion that the secrecy of the grand jury was violated by the presence of two stenographers who took the testimony of the witnesses and dictated it onto wax cylinders of dictaphones, from which two dictaphone operators transcribed and made copies thereof, which were accessible to persons other than the district attorney and his statutory assistants.

The court permitted testimony to be taken in support of the averments in the petition, and thereafter an argument was had and upon due consideration the motion to quash the indictment was overruled. The trial of the case resulted in a conviction of the defendant on the first and third counts. Sentence was imposed and this appeal followed.

The first assignment of error is to the denial of a motion of defendant to quash the indictment. Dauphin is a county of the fourth class and as such is entitled to have a district attorney and four assistants, who were appointed prior to the institution of this prosecution. The district attorney, upon petitions filed with the court of quarter sessions, prayed for the appointment of additional assistant district attorneys by reason of the unusual amount of labor involved in making an intensive investigation, and for the proper preparation of the matters to be presented to the grand jury.

Thereupon, the president judge of the Court of Quarter Sessions of Dauphin County appointed additional

special assistants to the district attorney. Thereafter additional similar petitions were presented. The court also authorized the district attorney to engage, in addition to his regular staff, stenographers, typists, a county detective, three investigators, a filing clerk, and a photostat operator.

On account of the large number of people concerned, the facilities afforded by the Dauphin County courthouse were inadequate, and therefore the investigation by the grand jury was conducted in another building by direction of the court. This proceeding was undoubtedly of public concern, affecting the interest of the Commonwealth, and to serve the interest of justice and safeguard the public purse, the court, to meet the existing emergency, in the exercise of sound discretion had the power to make such appointments as it deemed necessary to the efficient administration of justice.

The courts under our Constitution have certain inherent rights and powers which do not depend solely upon express constitutional or legislative grants. They may do all things that are reasonably necessary for the administration of justice within the scope of their jurisdiction: 14 Am. Jur., Courts, §171. Judge MAXEY now Justice of the Supreme Court, recognized that rule when presiding in Lackawanna County in Re *Surcharge of County Commissioners,* 12 D. & C. 471. In an elaborate opinion which included a discussion of inherent powers of the courts of record, he held that it is within the scope of the court's jurisdiction to order the payment of the salary of an employee who was required by a judge to assist him in the administration of justice, as that is within the court's inherent powers. See, also, *Commonwealth v. Shaffer,* 178 Pa. 409, 35 A. 924; *Edwards v. Prutzman et al.,* 108 Pa. Superior Ct. 184, 165 A. 255; *Lycoming County Commissioners v. Hall,* 7 Watts 290; 15 C. J. §205, p. 871.

Assuming these assistants to the district attorney

were but officers de facto and not de jure, they were discharging their duties on behalf of the public under an appointment, which, if irregular, gave them color of title and therefore they were not mere volunteers. Their authority to act cannot be successfully attacked here: *Wm. John Clark v. The Commonwealth*, 29 Pa. 129; *Krickbaum's Contested Election*, 221 Pa. 521, 70 A. 852; *Commonwealth ex rel. v. Snyder*, 294 Pa. 555, 144 A. 748; *Solar Electric Company v. The Public Service Commission*, 88 Pa. Superior Ct. 495; *Commonwealth v. Bleicker*, 120 Pa. Superior Ct. 397, 183 A. 78.

Furthermore, there was no testimony offered of any improper conduct among the persons designated as unauthorized, any evidence that the grand jury were influenced in their activities, or that the accused was prejudiced in any way. In the absence of proof to the contrary, the presumption is in favor of the legality and regularity of the proceedings before the grand jury: *Commonwealth v. Edmiston*, 30 Pa. Superior Ct. 54.

It is the duty of the district attorney, either personally or through his assistants, to attend upon a grand jury, lay before them all matters upon which they are to pass, aid them in the examination of witnesses and give general instructions as may be required. It is highly improper, however, for the district attorney or an assistant to take part in the deliberations of a grand jury, as it is their duty to consider alone the evidence and apply it to the case. The parties who were in the presence of the grand jury were not intruders or meddlers; they were there in discharge of their official duties, and there is no proof that they acted in excess thereof: *Commonwealth v. Bradney et al.*, 126 Pa. 199, 17 A. 600.

The most that could be claimed is that their presence was an irregularity, but that is insufficient to render an indictment invalid. In *Commonwealth v. Hegedus*, 44 Pa. Superior Ct. 157, President Judge RICE exhaust-

ively discussed the proper conduct of proceedings before a grand jury. There a motion made to quash the indictment was granted because a stenographer, employed by the district attorney, was present during the examination of the witnesses called before the grand jury and took notes of testimony and transcribed it in longhand for the use of the district attorney. We held upon appeal that action was erroneous. The opinion points out very clearly that the oath administered to the grand jury, "the commonwealth's counsel and your own to keep secret," is founded upon the principle that for public policy the grand jury should conduct their investigation and deliberate upon bills submitted in secret. This requirement of secrecy is not for the defendant's protection, but is primarily for the benefit of the Commonwealth. Certainly, it was never intended thereby to hamper the Commonwealth in the prosecution of offenses against the criminal law.

We held further that assuming the district attorney did not have the express right to take a stenographer before the grand jury, it did not follow that his action alone vitiated the indictment, as the mere presence of a person in the grand jury room, although an irregularity, is not necessarily fatal to the indictment.

Judge RICE states (p. 162): "But the statute does not in express terms exclude from the scope of his duties the rendering of stenographic assistance to the district attorney in the grand jury room, and the generality of the language of the statute furnishes ground for plausible argument, at least, that the intention of the legislature was to enable the district attorney to require of him that kind of service wherever in the performance of his duties as district attorney such assistance should become necessary."

In *McNair's Petition*, 324 Pa. 48, 57, 187 A. 498, the Supreme Court stated: "The ordinary conception of the duties of a grand jury was to guard the rights and

liberties of the people; it was so understood at its inception. Because of the method by which its deliberations are conducted and the secrecy surrounding them, it is a particularly suitable body to investigate misconduct of public officials and public evils."

The mere presence of the alleged unauthorized persons, representing the district attorney in the grand jury room, was not in our judgment sufficient ground for quashing the bill.

The appellant further stresses in support of this assignment that the district attorney improperly influenced the investigating grand jury, thus affecting his substantial rights, in the manner in which four witnesses, who were subsequently indicted on the charges of extortion, were questioned before the grand jury. After these witnesses had testified they were charged privately by the district attorney in his office that they had committed perjury by falsifing certain of their statements and were told that an opportunity would be given them to tell the truth.

Two of them were recalled as witnesses when one of the assistants to the district attorney stated that they had not complied with their oaths, as they had falsified in certain particulars and equivocated as to others. He stated that an opportunity would be given them to correct any of their testimony, thus relieving themselves of any possible punitive action, and were warned that unless they did so the district attorney proposed to proceed against them. These witnesses were afterward indicted for perjury by another grand jury.

The assistant district attorney should have omitted some of the remarks made, notwithstanding the record does show that these witnesses equivocated and had a failure of recollection that would arouse just suspicions as to whether they fairly and fully disclosed all they knew. However, these remarks were not made before the *investigating* grand jury and while we do not ap-

prove of them, they do not furnish grounds to quash these indictments which were returned true bills by a subsequent indicting grand jury on sufficient evidence.

There has been reference made to the testimony of a newspaper reporter who said that the district attorney had informed him that he had given a dinner on January 7, 1939, attended by Charles J. Margiotti, the former Attorney General, the district attorney's staff and their wives, a member unnamed of the grand jury, and other guests. The district attorney denied that a member of the grand jury was present on that occasion. It was not until some time thereafter that there was evidence produced before the investigating grand jury as to defendant's conduct. Of course, the indictment against him was not found by the investigating grand jury, but by the next current indicting grand jury in January 1939. We think that incident is not substantial, certainly not fatal to the indictment.

The court should not sustain a motion to quash an indictment except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights: *Commonwealth v. Haines,* 57 Pa. Superior Ct. 616; *Commonwealth v. Viscount,* 118 Pa. Superior Ct. 595, 179 A. 858. A careful review of the evidence taken in support of the charges that the defendant was prejudiced in the manner which the inquiry of his conduct was had by the investigating grand jury, brings us to the conclusion that there was not sufficient proof of any irregularity, unlawful or improper conduct that would have warranted the court below in quashing the indictment.

The appellant complains in the second assignment of error to certain statements made by the trial judge during the taking of the testimony on behalf of the Commonwealth before the completion of the trial, regarding

the duties of the Secretary of Highways and the effect of a wilful and corrupt violation of those duties.

Armond E. Keeley, assistant to the chief engineer of the Highways Department, was on the stand at the time a dispute arose between counsel as to the introduction of evidence relating to the standard practice existing in the Highways Department of carrying on the maintenance work as pertinent to Luzerne County. In order that all should understand the judge's views on that question he gave an explanation of the obligations resting upon the Secretary of Highways, the broad latitude that was given him in employing persons and the extent to which he would allow the Commonwealth to go to establish their allegations that the defendant was guilty of malfeasance in failing to use the proper discretion required by law. In the course of his remarks he said that the number of employees and the necessity, rests entirely in his discretion, and as jurors, they were not to substitute their judgment for the judgment of the Secretary of Highways, and that the defendant was not to be held criminally responsible merely because he had erred in hiring more men than was necessary to do a given job. On the other hand, the Secretary of Highways did not have the right to wilfully, wrongfully, maliciously and unlawfully employ persons, well knowing that they were unnecessary for the work, but to the prejudice of the Commonwealth of Pennsylvania. At the end of these remarks the judge said: "Now, I make that broad outline so that it may obviate the necessity of objecting to testimony, and it may curtail the Commonwealth in the amount of proof that they intend to offer."

We cannot see the slightest ground for the defendant to take exception to what was said by the judge at that time. It is quite proper for a trial judge to eliminate confusion by elucidating the issues at any state of the trial in the aid of a proper and fair administration of

justice. Nothing was said that could possibly have misled the jury or anyone else to believe that he was fully charging on all the questions of law or on the ultimate question of defendant's guilt or innocence. Obviously, that was not the purpose of these remarks. The formal charge that followed at the end of the case was correct and complete. We find no reason to sustain this assignment.

The third assignment relates to an alleged objectionable remark of counsel for the Commonwealth in making a reply to an objection interposed by counsel for defendant to the admission of evidence offered by the Commonwealth as follows: "We submit to the Court that it would be clearly an abuse of the discretion for the defendant to have, without any justification, robbed the other highways in the State and other counties and districts of the State of moneys to which they were reasonably entitled, and to have, for his own purposes, and his own ends, abused his discretion by taking those moneys and using them in Luzerne County."

After objection was made thereto the judge, in order that the jury would understand the sense in which "rob" was used, clearly explained that the district attorney did not mean the word in its legal sense of a felonious taking. The remark in our judgment was entirely innocuous: *Commonwealth v. Anagustov et al.,* 82 Pa. Superior Ct. 156; *Commonwealth v. Crittenton,* 326 Pa. 25, 191 A. 358.

The fourth assignment of error complains of the court's qualifying its answer to the defendant's second point in the supplemental charge to the jury. The jury, after deliberating for some hours, returned to the courtroom and asked for further instructions relating to the points submitted by the defendant. Thereupon the court told the jury that the points submitted were to be taken in consideration with the general charge and then gave further instructions.

The second point, which, with others was referred to, read as follows: "If the jury find from the evidence in this case, that the defendant acted upon the recommendation of his three chief subordinates, and after consultation with them, such action on the part of the defendant was a valid exercise of his discretionary powers."

The trial judge said he had affirmed that point subject to instructions given in his general charge and "that it was the responsibility of the defendant, under his position, for the act which he did, and that those subordinates were acting in an advisory capacity to him. By that instruction I did not mean to inform you that he has to accept the advice of the subordinates. They, in turn, may be wrong in their advice to him, and it is for you to determine, under the facts, what advice was given him, taking their testimony and his, and to say whether that advice was sufficient for him to base his discretion upon. If it was and he acted within the bounds of reason, why, then, of course, he would be not guilty; ......" The court went on to state, however, that that advice did not relieve him of entire responsibility.

These supplementary instructions were not in conflict with the general instructions that had been given and were correct statements of the law. Section I of the Act of Assembly, May 18, 1923, P. L. 259, 71 PS §1375, defining the powers of the defendant as Secretary of Highways, expressly provides that the powers vested in him shall not be construed to relieve him of responsibility for such acts which may be performed by his assistants and subordinates. The law does not say, nor does it contemplate, that their judgment shall be substituted for his. He is the one that is primarily responsible for using proper discretion and he may not escape or avoid that obligation by attempting to delegate authority to assistants. The instructions given the jury

did not place any greater burden upon the defendant than he was required to assume under the law.

The assignments of error, fifth to tenth, inclusive, allege that the acts and omissions of the defendant were neither corrupt nor wilful were but a valid exercise of official discretion and therefore did not constitute the offense of malfeasance or nonfeasance in office. Neither of these charges, which are sometimes referred to as a misbehavior or misdemeanor in office, has been defined by statute. They are known as common law offenses.

The basis of both counts in the indictment was a wilful and corrupt misuse and waste of public funds. The first charges, inter alia, as above stated, the wilful and corrupt misuse and waste of public funds for political purposes and the second charges the defendant with wilfully and corruptly neglecting and refusing to perform the duties of his office by failing to investigate the cause of the illegal expenditures of the fund and cause the termination thereof. Misconduct or malfeasance in office in its penal sense is not merely error in judgment or departure from sound discretion, but the act, omission or neglect must be wilful, corrupt and amount to a breach of duty legally required by one who has accepted public office: *Commonwealth v. Brown et al.,* 116 Pa. Superior Ct. 1, 175 A. 748.

A discretionary duty must be exercised with reason as opposed to caprice or arbitrary action. "The very term [discretion] itself, standing alone and unsupported by circumstances, imports the exercise of judgment, wisdom, and skill, as contradistinguished from unthinking folly, heady violence, and rash injustice": *Paschall v. Passmore,* 15 Pa. 295, 304; *Dauphin County Grand Jury Investigation Proceedings (No. 3),* 332 Pa. 358, 364, 2 A. 2d 809.

If the evidence supports the charges in the indictment, and the jury has found it did, the defendant is guilty under the common law; *Commonwealth v. Miller,*

94 Pa. Superior Ct. 499; *Commonwealth of Penna. v. Rosser et al.*, 102 Pa. Superior Ct. 78, 156 A. 751; *McNair's Petition*, supra; *Commonwealth v. Coyle*, 160 Pa. 36, 28 A. 576, 24 L. R. A. 552, 40 Am. St. Rep. 708.

The proof offered by the Commonwealth was sufficient to establish that the defendant, instead of performing his official duties with a sound discretion to the interest of the Commonwealth, acted capriciously, arbitrarily, and with a wilful and corrupt design.

There was testimony that 368 men could normally maintain 734 miles of state highway in Luzerne County and that there was no unusual condition existing in the fall of 1938. For the fiscal year, beginning June 1, 1938, there was an original budgetary estimate for maintenance of the highways in Luzerne County of $350,000. This fund was about exhausted in September 1938, so that in 4½ months the allotment for the year had been consumed. On October 13, 1938, the appropriation was overdrawn by approximately a quarter of a million dollars. On October 14, 1938, assistant chief engineer Keeley ordered all payments for the work in Luzerne County stopped, and three days thereafter the chief engineer Marshall ordered all work to cease and so reported to defendant the following day. Notice, in the meantime, had been given defendant by Keeley that 9,000 men were on the payroll in Luzerne County at a cost of $45,000 a day. He told defendant that that number of men was excessive and that the situation was "preposterous." The defendant agreed that number of employees was "out of line." There was evidence that the number of men employed from October 5, to November 5, varied from 9,429 to over 19,000 and that many of these men were not working on the highways, but were engaged at other employment, attending political rallies, etc., when they were being paid to work on the highways. Numerous employees were not selected by the foremen but were given cards by political leaders.

They would present these to the time-keeper and their names would then be placed on the payrolls.

On October 26, 1938, notwithstanding Brownmiller was in possession of all the information, he did not exercise his authority to correct these fraudulent abuses, but to the contrary arbitrarily authorized the resumption of the work and thereafter more men were employed. On that date he signed a letter addressed to Marshall directing a transfer of funds to cover the overdraft in the sum of $1,043,000 to provide for a further continuation of work until May 15, 1939. Permitting the employment of this large number of men and ordering the payment of their wages from public funds was certainly not for the benefit of the Commonwealth.

One cannot escape the conclusion that the action of the defendant was a wilful, arbitrary abuse of discretion, with the corrupt motive to keep a large number of men on the maintenance payroll until the election, November 7, 1938. It was shown also, in support of the charge that the conduct of the defendant was designed and corrupt, that on prior occasions the payroll of the highway department in Luzerne County was "padded" in a similar manner, and that the circumstances thereof were known to him.

The facts sufficiently warranted the jury in finding the defendant was guilty of the crimes with which he was charged. The record shows that he had a fair trial, properly conducted, with all the rights afforded him by law.

Judgment is affirmed, and it is ordered that the record be remitted to the court below and that the defendant appear in said court at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.