## West v. Peoples First National Bank & Trust Co.

*William B. Paul, William C. Hurtt* and *Paul, Lawrence & Rock,* for plaintiff.

*Arthur W. Henderson, Judson A. Crane, William S. Moorhead, Jr., and Moorhead & Knox,* for defendant.

Weiss, J., July 5, 1951.—This is a declaratory judgment proceeding filed by plaintiff on September 26, 1949, in which he requested this court to construe his rights and the rights of defendant trustee in a certain agreement of joint adventure between them, executed in April of 1941, and later amended. Under this agreement plaintiff, West, was to subdivide into building lots and to improve and sell as building lots a certain tract of land approximately 140 acres, owned by defendant trustee and located in Wilkinsburg, Braddock Hills and Edgewood Boroughs.

Before any of the land was subdivided into building lots but during which time plaintiff prepared extensive plans, the Commonwealth of Pennsylvania, acting under authority of the State Highway Law, first in October 1946, and next in November 1947, seized and condemned an area of land exceeding 50 acres in the center of the tract for highway purposes, whereon the new intersection of Penn-Lincoln Parkway with Ardmore Boulevard is now being constructed.

In May of 1947 defendant trustee, with the approval of plaintiff, West, but without his joinder in the deed, sold and conveyed to M. & S. Construction Company a parcel of unimproved acreage out of the uncondemned portion of the tract, and received therefor the sum of $20,252.40. In October of 1948 defendant trustee, with the approval of plaintiff, West, but without his joinder in the deed, sold and conveyed to Westinghouse Electric Corporation a parcel of unimproved acreage out of the uncondemned portion of the tract, and received therefor the sum of $11,142. Defendant trustee received the proceeds of sale as the owner of the land sold.

When plaintiff, West, instituted his declaratory judgment action, he asked for and was granted by the court a stay order reading as follows: "All proceedings to be stayed in the meantime." This court believes

that that stay order is a matter of some interest at this stage of this proceeding.

On April 10, 1950, trial of the declaratory judgment proceedings was commenced before His Honor, Judge McNaugher, and on April 12, 1950, a basis for settlement of the litigation was agreed upon by the parties in Judge McNaugher's courtroom. At the request of plaintiff, West, however, this settlement had been made subject to the approval of Country Club Heights Company, a corporation, not a party to the proceedings. After several weeks of additional conferences and negotiations, Country Club Heights Company could not be persuaded to approve the settlement agreed upon by the parties and accordingly the settlement failed.

On June 28, 1950, defendant trustee, filed a petition for revision of the stay order, and plaintiff in filing his answer indicated no objections thereto.

On March 15, 1951, counsel for defendant trustee notified counsel for plaintiff that they intended to make application to the court for the appointment of viewers —first, to have the damages determined and second, to stop the running of the statute of limitations.

On March 16, 1951, defendant trustee petitioned the court for the appointment of viewers. Viewers were appointed on April 6, 1951—no objection was raised by plaintiff or his counsel.

On April 4, 1951, plaintiff filed a petition in this court alleging that defendant trustee violated the "Stay Order" of September 26, 1949, by petitioning for viewers. On April 23, 1951, defendant trustee filed its answer and asserted that plaintiff was estopped from making such an allegation due to his conduct and admissions made in this court and set forth in this factual analysis herein. This petition, filed April 4, 1951, and the answer on April 23, 1951, *are the only matters currently before this court en banc for disposition.*

Where a declaratory judgment proceeding is pending in this court to ascertain the interests of two joint adventurers in a tract of land which has been condemned by the Commonwealth, should the party holding legal title be permitted to go to hearing before the board of viewers for the purpose of obtaining damages for the taking prior to a determination of the rights of the parties in the pending declaratory judgment proceeding?

The *sole issue* before this court is whether defendant trustee should be permitted to litigate the viewer proceedings *before* the determination of the rights of the parties in the condemned land, in the declaratory judgment proceeding which is now pending before this court. It is true that the parties argued the merits of the declaratory judgment proceedings before this court en banc, but this matter is not before us.

Defendant trustee's principal contention is that plaintiff did not in theory or principle oppose defendant's petition for a review of the stay order and the subsequent petition for the appointment of viewers. It is true that plaintiff did not oppose the appointment of viewers, for to oppose this vital matter indefinitely would result in defeating his own cause by the tolling of the statute. Plaintiff stated in his answer to defendant trustee's petition part of the following:

"6. . . . and plaintiff alleges that any delay in the determination of damages jeopardizes plaintiffs' property rights equally as much as it jeopardizes the property rights of the defendant."

We believe, however, that this answer, together with the remainder of the answer in paragraph 6, would not constitute an estoppel defeating the relief prayed for by plaintiff, West, in his petition filed April 4, 1951. Had defendant trustee under these same circumstances proceeded with the hearing before the viewers and obtained an award in damages, and then plaintiff would

have asked this court for injunctive or alternative equitable relief—this court would be justified in discharging said rule under the doctrine of estoppel, as well as under well-settled principle of law that a party will not be allowed to maintain inconsistent positions in judicial proceedings.

But, the parties have important rights, and under the law this court must determine them before adjudicating separate, distinct and important rights in an entirely collateral legal proceeding (viewers).

This court having jurisdiction over the parties and the declaratory judgment proceeding, has the necessary and usual incidental powers necessary to effectuate its jurisdiction and has power to do all things reasonably necessary for the administration of justice within the scope of its jurisdiction. Thus matters or questions incidental to, or growing out of, the main action and coming within the above principals may be taken cognizance of by the court and determined since such jurisdiction is in aid of its authority over the principal matter. When the parties are rightfully in court, the court has jurisdiction over them and that jurisdiction continues without further notice, as long as any steps can be rightfully taken in the cause. See Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107.

Equity will assume jurisdiction for the purpose of preventing a multiplicity of suits. However, in the application of this principle, each case must be decided on its own merits in the exercise of a sound legal discretion, the factors to be considered to be the real and substantial convenience of all parties, the situation of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied: Oil City National Bank, Exr., v. McCalmont, Exr., 303 Pa. 306.

The rule granted by Judge Soffel on April 4, 1951, is made absolute, and the court directs the pretrial

**280**

court to place this case at the head of the list on the first available date agreed to between the parties and counsel to this proceeding.