Commonwealth *v.* Judge Smart.

Argued November 13, 1951. Before Drew, C. J., Stern, Stearne, Bell, Ladner and Chidsey, JJ.

*Clair V. Duff,* Assistant Deputy Attorney General, with him *Earle T. Adair,* Special Deputy Attorney General and *Robert A. Doyle,* Assistant Deputy Attorney General, for Commonwealth.

*Earl F. Reed,* with him *Kenneth G. Jackson, Charles H. Sachs, Herbert B. Sachs* and *Thorp, Reed & Armstrong,* for defendants, intervenors.

Opinion by Mr. Justice Horace Stern, December 6, 1951:

The petition here presented is for a writ of prohibition to restrain the Court of Quarter Sessions of Allegheny County from enforcing orders made by it permitting certain defendants who had been indicted by the Grand Jury to take testimony in regard to matters that allegedly occurred during the course of the proceedings of that body.

A regular Grand Jury returned true bills of indict-
ment against two individuals and two corporations,
charging bribery. Their counsel filed motions to quash
the indictments on the ground that the Deputy Attor-
neys General who attended the jury read to them a
presentment which had been returned by a Special or
Investigating Grand Jury and which was said to con-
tain unfair statements concerning the defendants; also
on the ground that the Grand Jury's action in finding
true bills was influenced by coercive and improper con-
duct on the part of the Deputy Attorneys General in
that they told the jurors that they must act in accord-
ance with instructions given them by the Deputy At-
torneys General as to the law; that the instructions
they did give were incorrect; that they advised the
Grand Jury that the Attorney General was desirous of
securing indictments of the defendants; that they made
derogatory remarks concerning the defendants; that
they themselves testified and gave evidence against the
defendants although their names were not endorsed on
the bills of indictment as witnesses. On the same day
that the motions to quash the indictments were filed
counsel for defendants also presented petitions that the
court should permit testimony to be taken in support
of those motions and should direct the official report-
ers who took notes of and transcribed the proceedings
before the Grand Jury to make available to the defend-
ants a complete copy of that portion of the proceed-
ings which set forth in full all statements, directions,
comments or instructions made or given to the Grand
Jury by any of the Deputy Attorneys General who at-
tended its deliberations. The motions to quash the in-
dictments, as well as the petitions to take testimony,
were sworn to by one of the defendants on information
and belief. Later the motions to quash the indictments
were amended by adding to each a statement that the
averments contained therein were "based upon infor-

mation received in an interview with one of the members of the said Grand Jury which returned said indictment, said interview having been held with said former grand juror subsequent to the dates on which said indictment was returned, the defendants appeared voluntarily and posted their recognizances as aforesaid and the said Grand Jury was discharged." The Commonwealth moved to dismiss the motions and the petitions on the ground that matters alleged to have occurred in the Grand Jury room ought not be investigated by either a public or a private examination of the members of the Grand Jury, and that the court had no right to inquire into their proceedings. The court, one of the three judges dissenting, filed orders granting the defendants' petitions to take testimony and refusing the Commonwealth's motions to dismiss them. There followed the present petition of the Commonwealth to this court for a writ of prohibition to prevent the court below from enforcing or carrying its orders into effect and from inquiring, or permitting defense counsel to inquire, into the proceedings before the Grand Jury. We gave leave to the defendants to intervene and they accordingly filed an answer to the petition.

In view of the large amount of literature that has been written concerning the origin and history of the Grand Jury as one of the administrative agencies of the criminal law employed for centuries throughout the Anglo-Saxon world it is wholly unnecessary to attempt to elaborate upon those themes. Likewise there is no need to stress the vital importance of the maintenance of secrecy in regard to the deliberations and proceedings of Grand Juries, for the policy of the law in that respect has been so long established that it is familiar to every student of the law. The form of the oath of secrecy to be exacted of grand jurors was prescribed in our own Commonwealth as early as the Frame of Government enacted by the Provincial Assembly in 1696,

substantially the same as it had been set forth in 1681 in the *Earl of Shaftesbury's Trial,* 8 How. St. Tr. 759, 771.[1] Generally speaking, the rule is that grand jurors cannot be sworn and examined to impeach the validity and correctness of their finding if an indictment has been regularly returned.[2] It is true that some inroads have been made upon the rule of secrecy, with a resulting number of established exceptions. Thus a grand juror has been held to be a competent witness to prove who the prosecutor was: *Huidekoper v. Cotton,* 3 Watts 56. Or to contradict the testimony of a witness as to what she testified to before the Grand Jury: *Gordon v. Commonwealth,* 92 Pa. 216; *Commonwealth v. Carr,* 137 Pa. Superior Ct. 546, 10 A. 2d 133. Or to testify that the indictment was based solely upon testimony heard by the Grand Jury in another case against another person: *Commonwealth v. Green,* 126 Pa. 531, 17 A. 878; *Commonwealth v. McComb,* 157 Pa. 611, 27 A. 794; *Commonwealth v. Ross,* 58 Pa. Superior Ct. 412.

As to whether the mandate of secrecy nevertheless permits disclosure by a grand juror concerning alleged improper acts or misconduct on the part of the prosecuting officer in the Grand Jury room[3] there is con-

---

[1] See opinion of President Judge KELLER in *Commonwealth v. Kirk,* 141 Pa. Superior Ct. 123, 130-134, 14 A. 2d 914, 918, 919.

[2] Even the testimony of petit jurors cannot be admitted to impeach their verdict: *Redmond v. Pittsburgh Railways Co.,* 329 Pa. 302, 198 A. 71.

[3] The function of the prosecuting officer is to attend on the grand jurors with regard to matters on which they are to pass, to aid in the examination of witnesses, and to give such general instructions as they may require, but he must not attempt to influence their action nor indeed should he be present while they are deliberating on the evidence or voting on a matter under investigation: *Commonwealth v. Bradney,* 126 Pa. 199, 205, 17 A. 600, 601; *Commonwealth v. Brownmiller,* 141 Pa. Superior Ct. 107, 113, 14 A. 2d 907, 910.

siderable contrariety of opinion in the various jurisdictions, (see cases collated in 90 A. L. R. 249 et seq.), which naturally results from the fact that there are obviously valid reasons to support either view. On the one hand, to close the doors of the Grand Jury room so tightly that the actions of the prosecuting officer therein cannot be disclosed, however flagrant and unlawful his conduct may have been and however much it may have been responsible for the finding of a wholly unauthorized bill of indictment, would be unfair to the defendant thus indicted even though, if innocent, he could subsequently vindicate himself in a trial upon the merits; it would also permit an over-zealous official to use the power of his office and his influence with the grand jury as an instrument of oppression, with immunity from investigation. On the other hand, to allow such an investigation lightly to be had would afford an opportunity to every defendant to institute dilatory proceedings and divert the course of justice from himself to an attack upon the public officials charged with administering the law and thereby seek to make them the defendants in the proceedings instead of himself. In the Court of Oyer and Terminer of Philadelphia County it was held, almost a century ago, in *Commonwealth v. Twitchell*, 1 Brewster 551, that the District Attorney could not be examined to prove that the Grand Jury had refused to find a true bill and that thereupon he had illegally advised with and influenced them to indict the defendant; it was further held that neither any officer who had been present in the Grand Jury room nor the members of the Grand Jury could be allowed so to testify, although one of the two judges constituting the court was of opinion that if any act contrary to law and affecting the finding of a bill of indictment took place in the Grand Jury room it was competent to prove it by any person present except a grand juror, since otherwise

crimes might be committed there with impunity. In *Ziegler v. Commonwealth*, 10 Sadler 404, 14 A. 237, defendant moved to quash the indictment on the ground that the Grand Jury had decided not to return a true bill, whereupon the District Attorney had "vehemently addressed" them, urging them to find a true bill, which they then did at his instance,—these facts to be proved by members of the Grand Jury, whom the defendant proposed to call and examine in open court. The trial court denied the motion, and this court, in a per curiam opinion, asserted that to have quashed the indictment for the reason assigned would have been "to introduce a very bad practice, and one heretofore unknown to the criminal jurisprudence of Pennsylvania. That an indictment, regularly found and returned to the court, should be impeached by the testimony of the grand jurors who found the bill is a proposition that cannot be sustained."

Even though it might be possible to imagine a situation which presented justification, and even necessity, to investigate the acts and conduct of a prosecuting officer during the course of his attendance upon the Grand Jury, it is certainly true that such an investigation should never, under any circumstances, be instituted except on the basis of credible, detailed, sworn and persuasive averments by witnesses of the irregularities complained of. In *Commonwealth ex rel. McLean v. Judges McNaugher, Soffel and Smart*, Western District, Miscellaneous Docket No. 1791, a petition was presented to this court for a rule to show cause why a writ of mandamus should not issue directing the respondent judges to conduct an inquiry into alleged illegal conduct of the Grand Jury proceedings, it being averred that prosecuting officers in charge of the Grand Jury had coerced the jurors into returning a presentment against the petitioner. The petition seeking such an inquiry in the court below—the Court of

Quarter Sessions of Allegheny County—had been sworn to on information and belief derived from anonymous phone calls made to the petitioner, the caller identifying herself as one of the members of the Grand Jury, and the court below had dismissed the petition, holding that averments based upon such information did not warrant its investigation of matters involving the secret deliberations of the Grand Jury. This court refused to allow the rule for the issuance of the mandamus, prayed for, and held that the court below had properly declined to grant the petition.

In *United States v. American Medical Association*, 26 F. Supp. 429, where defendants moved for an investigation of proceedings before the Grand Jury, alleging, inter alia, improper conduct on the part of the government attorneys and stating that some members of the Grand Jury had indicated a willingness to talk with defendants' counsel concerning such matters, it was held by the court that an inquiry as to whether the finding of an indictment had been improperly induced was "justified only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment. Averments on information and belief have been uniformly held not enough (citing cases). . . . The effect of granting such a motion would be to break down all legal checks against technical, dilatory tactics. The strong presumption of the regularity of grand jury proceedings would no longer prevail. . . . Every accused could upon the flimsiest pretext enlist the court's aid in a 'fishing expedition', to discover some supposed irregularity to use as a basis for dilatory action; to cull over the evidence and get the government's case against him in advance of trial; to divert and turn back the course of a criminal case from a trial of himself to a trial of the grand jury and the prosecuting officers. . . . There could be no effective

way of guarding against the manifold abuses that such a practice would encourage. . . . it must be remembered that sound reasons of public policy in the administration of justice lie back of the rules which forbid free access to these channels of information. As Judge LEARNED HAND, in dealing with a somewhat similar situation, has said: 'No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price.' . . . To grant [defendant's motion to investigate proceedings before the grand jury] would do violence to salutary rules strongly rooted in our jurisprudence which, without sacrificing any of the fundamental safeguards, look to the speedy and practical administration of criminal justice with due regard to the just rights of society." See also *United States v. Bopp,* 232 F. 177; 53 Am. Jur. 777, §1118.

The alleged information upon which investigation of the conduct of the prosecuting officers before the Grand Jury is sought in the present instance is just as flimsy as it was in *Commonwealth ex rel. McLean,* supra. The amendments to the motions to quash the indictments were sworn to by one of the defendants as to the truth of the averments therein contained, namely, that the information was received in an interview with one of the members of the Grand Jury which returned the indictments. Who the grand juror was is not revealed. Neither is it disclosed with whom the interview was had; the affidavit in regard to the fact of its occurrence being by one of the defendants, —made categorically and not on information and belief,—it must have been he who held or attended the interview with the grand juror. The information thus derived was, of course, hearsay and unsworn to. It would be wholly preposterous to hold that a court would be justified in virtually putting the prosecuting

officers to a defense of their conduct before the Grand Jury on a mere averment that an anonymous grand juror had made charges against them, not in a disclosure to the court, but in an alleged conversation with one of the defendants against whom the indictments had been found. It is not believed that any authority in any jurisdiction has gone so far as to countenance a breaking down of the secrecy of the proceedings within a Grand Jury room upon so unsubstantial and dubious a justification. Indeed it does not even appear whether the alleged interview was *actively sought* by defendant or someone on his behalf, in either which case such action would have been unethical, improper and forbidden by public policy: *Commonwealth ex rel. Darcy v. Claudy*, 367 Pa. 130, 79 A. 2d 785; *Schmidt v. United States*, 115 F. 2d 394.

There can be no question but that a writ of prohibition is a proper and permissible remedy in a case such as the present, for it lies not only where a court acts outside of its jurisdiction but also where there is an abuse of jurisdiction: *McNair's Petition*, 324 Pa. 48, 64, 187 A. 498, 505, 506; *Carpentertown Coal & Coke Co. v. Laird*, 360 Pa. 94, 61 A. 2d 426; *Schlesinger Petition*, 367 Pa. 476, 483, 81 A. 2d 316, 319.

The petition for a writ of prohibition is granted as prayed for; costs to be paid by the intervenors.

Mr. Justice JONES took no part in the consideration or decision of this case.