Commonwealth, Appellant, *v.* Poley.

Argued March 9, 1953. Before RHODES, P. J., RENO, ROSS and WRIGHT, JJ. (HIRT, DITHRICH and GUNTHER, JJ., absent).

*Samuel Dash,* Assistant District Attorney, with him *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellant.

*Jacob Kossman,* for appellee.

OPINION BY RENO, J., July 14, 1953:

A county detective swore out an information before Magistrate Myers charging Poley, appellee, with setting up and maintaining an illegal lottery and conspiracy to set up and maintain the same. The warrant issued thereon was not served upon Poley and he was not actually or manually arrested. According to the statement of his counsel, Poley appeared voluntarily[1] before the magistrate "at Magistrate's Court No. 3, 1159

---

[1] Poley's counsel stated: "I would also like to point out that despite the statements in the newspapers about they can't find people, and radio and television broadcasts, Mr. Poley was available and *came here voluntarily.*" (Emphasis added.) Record 55a.

South Twelfth Street",[2] where, after a hearing, he was held for trial in the quarter sessions court under $1,000 bail, which he entered. The four indictments subsequently found against him were quashed on the ground that the magistrate was without jurisdiction in that the preliminary hearing was held in his own court and not in a divisional police court. The Commonwealth appealed.

The Magistrates' Court Act of June 15, 1937, P. L. 1743, §11, as amended, 42 P.S. §1111, provides for the establishment of divisional police courts presided over by magistrates, rotatively assigned by the chief magistrate, "in which, in addition to the hearings regularly held therein, shall be held exclusively (except as provided in Section 10 hereof[3]) the hearings of all persons *arrested on sight or on a police warrant* for the following indictable offenses, that is to say: For treason, . . . *keeping, setting up and maintaining lotteries,* . . . *pool selling and book making,* . . . and also all *conspiracies,* . . . to commit any of the foregoing offenses, . . ." (Emphasis added.)

Poley was not arrested on the warrant; he appeared *voluntarily;* and the Commonwealth advances the potent argument that he is not within the literal meaning of the explicit provision of the Act which requires that only the cases of "persons arrested on sight or on a police warrant" be heard in the divisional police courts. Although this contention could justify a reversal, we prefer to rest the decision upon the broader and more vital issue of the jurisdiction of the magis-

---

[2] Apparently the hearing was held in the magistrate's "private office", at that address, instead of his court room. A magistrate's "private office" is doubtless what the law calls the "chambers" of a judge of a court of record.

[3] Section 10, 42 P.S. §1110, provides for hearings in the Central Police Court held in the City Hall.

trate, which the court below decided adversely to the contention of the Commonwealth.

Clearly, the magistrate was armed with complete jurisdiction. He had jurisdiction of the person, since he had issued a warrant upon an information and Poley had appeared voluntarily. He had jurisdiction of the subject matter, since the information charged a crime and as a justice of the peace ex officio (Act of May 10, 1927, P. L. 866, §18, 42 P.S. §1058[4]) he was authorized to inquire into the facts to determine the existence of a prima facie case, require and accept bail or commit the accused. 1 Sadler, Criminal Procedure, (2nd Ed.) §36. He was acting within his territorial jurisdiction, which extends throughout the City and County of Philadelphia. Constitution, Art. V. §11; Act of 1927, §18, supra. And he was sitting in the place appointed by law for the performance of his judicial duties.[5]

The 1937 Magistrate's Act did not purport to oust or alter the *jurisdiction* of the magistrates. To the contrary, it recognized and preserved their jurisdiction. The title of the Act, as amended by the Act of May 9, 1949, P. L. 1028, relates solely to the "duties" and "practices" of the magistrates: *"regulating* the *practice* in and defining magistrates' courts."* The Act is exclusively a procedural statute. It was thoroughly examined in *Rutenberg v. Philadelphia,* 329 Pa. 26, 196

---

[4] This section was not repealed by the 1937 Magistrates' Court Act.

[5] 1159 South Twelfth Street is within the boundaries of the district prescribed for Magistrate's Court No. 3. See "Historical Note" appended to 42 P.S. §1043. *Com. v. Kurz,* 14 Dist. Rep. 741, upon which defendant and the court below heavily relied, is not in point. There the magistrate of Court No. 15 held the hearing in the Hale Building which the court said, "is not within the limits of the district of [Magistrate's] Court No. 15."

A. 73, and the Supreme Court sustained the sections relating to the criminal side of the magistrates' courts, p. 41, as "a proper exercise of legislative power to *prescribe criminal procedure* and administrative reforms in these courts." (Emphasis added.) More devastating of the contention that the Act ousted Myers' jurisdiction is the Supreme Court's additional emphatic pronouncement, p. 33, "Furthermore, no magistrate is deprived of any jurisdiction by their [divisional police courts] creation, because each magistrate in rotation sits in these divisional stations, *and no magistrate who has issued a warrant is deprived of the right to have the offender brought before him for hearing.*" (Emphasis added.) The Act regulates magisterial procedure only, and whatever may be the effect of other sections, §11 confers no fundamental rights upon defendants.

Unless the statement of the Supreme Court, last quoted above, means that magistrates, notwithstanding the establishment of the divisional police courts, may still hear cases for which they have issued warrants in their own courts, Magistrate Myers should have followed the procedure prescribed by the Act, and referred Poley's case to the proper divisional police court. Doubtless, upon timely objection or motion, he would have referred it, or discharged it. His error related wholly to a matter of procedure, and Poley participated in it. By voluntarily appearing and submitting to the hearing, he did not confer jurisdiction by consent; but by failing to object and by entering bail he did waive all procedural errors, if any were committed.

Furthermore, considering the Act as a procedural statute, defects or irregularities in the preliminary or antecedent proceedings will not be examined on a motion to quash. *Com. v. Mallini,* 214 Pa. 50, 63 A. 414; *Com. v. Brennan,* 193 Pa. 567, 44 A. 498; *Com. v. Valsalka,* 181 Pa. 17, 37 A. 405; *Com. v. Manfredi,* 162

Pa. 144, 29 A. 404; *Com. v. Wideman,* 150 Pa. Superior Ct. 524, 28 A. 2d 801; *Com. v. Murawski,* 101 Pa. Superior Ct. 430; *Com. v. Magid et al.,* 91 Pa. Superior Ct. 513; *Com. v. Williams,* 54 Pa. Superior Ct. 545. "It is well settled that where, as in the present case, a defendant has had a preliminary hearing, has given bail for court, and has been regularly indicted by a grand jury upon examination of witnesses, *it is then too late to question the sufficiency or regularity of proceedings prior to the indictment.* In case defendant feels himself to be aggrieved in such circumstances, his proper remedy is by proceedings to be discharged from custody upon the ground of illegal commitment, and not by motion to quash the indictment": *Com. v. Murawski,* supra, p. 431. (Emphasis added.) "The court should not sustain a motion to quash an indictment except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights": *Com. v. Brownmiller,* 141 Pa. Superior Ct. 107, 116, 14 A. 2d 907.

The order quashing the indictments is reversed; the indictments are reinstated; and the record is remitted to the court below with a procedendo.