Commonwealth *v.* Schwartz, Appellant.

436

Argued March 28, 1955. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE, and ERVIN, JJ. (GUNTHER, J., absent).

*Edward E. Petrillo,* for appellant.

*Damian McLaughlin,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 21, 1955:

This is an appeal by defendant from conviction and sentence on a charge of bribery brought under the penal provisions of the Third Class City Law of June 23, 1931, P. L. 932, Art. IX, §911, as amended by the Act of June 28, 1951, P. L. 662, §9, 53 PS §12198-911.

The charge grew out of an extensive investigation by the District Attorney of Erie County into alleged

bribery of officials and employes of the City of Erie in connection with gambling or the operation of the "numbers racket" in that city. The inquiry resulted in indictments against about forty persons, twelve of whom were tried and convicted, while eighteen pleaded guilty.

The bill of indictment at No. 309, November Sessions, 1954, in the Court of Quarter Sessions of Erie County, charged Stanley M. Schwartz, the appellant, with giving money, to wit, $500, to Thomas W. Flatley, Mayor of the City of Erie, to influence him in the performance or nonperformance of his official duties as mayor by willfully failing to enforce the laws of the Commonwealth pertaining to gambling. The jury returned a verdict of guilty against appellant, and his motions for new trial and in arrest of judgment were refused by the court below. On appeal to this Court, appellant alleges the court below erred in refusing to grant his motions. We shall consider the numerous contentions presented.

Appellant's assertion that the evidence is not sufficient to sustain the conviction is devoid of merit as a brief review of the evidence discloses. The first witness called by the Commonwealth was Jack Martin, formerly a police inspector of the City of Erie, who had also been indicted for bribery and had pleaded guilty. Martin told of a meeting in Mayor Flatley's office on or about April 10, 1954, at which appellant and the mayor were present. It was there agreed that Martin should see certain gamblers or "numbers men" and collect money from them. These collections had formerly been made by one Henry Soscia, who had been dropped as collector because of difficulties with the police. Martin named the gamblers from whom he collected and also those who paid money to appellant. For nearly a year Martin, the mayor, and appellant

met once a month, often in the mayor's office. They equally divided the money collected, after paying $250 a month to Soscia to keep him quiet. About $1,500 was collected each month by Martin and appellant. Martin also testified to the arrest of certain gamblers who had been making protection payments, and that he was thereupon called by Mayor Flatley and directed to go to appellant's home, where appellant warned him not to make any more such arrests if he wanted to retain his job. An operator of a cigar store and a "numbers man" in the City of Erie testified he paid appellant $250 a month from May through October, 1954, for no reason other than appellant asked this witness for "political funds."

Following their arrests appellant and Mayor Flatley made written statements or confessions which were read into evidence at appellant's trial. In his signed statement appellant gave detailed accounts of meetings with the mayor, Martin, and Soscia at which it was agreed that money should be collected from men in the "numbers business" or lottery, including the amounts to be collected by appellant, Martin, and Soscia from the various "numbers men" named. Appellant therein said that the period when the collections were made by them covered approximately a year and four months, ending with September, 1954; and that the money was divided, usually in the mayor's office, being put into three envelopes, averaging $500 each. In his confession Mayor Flatley admitted receiving about $500 a month from appellant and Martin; and that the division sometimes took place in the mayor's office. Flatley stated he suspected the moneys came from persons in the "numbers game," though he denied receiving any money directly from gamblers. The Flatley confession was taken in the presence of appellant who made suggestions as to what it should

contain. Assistant District Attorney Johnson testified that just prior to the time Flatley made his written confession appellant entered the room, and, in the presence of prosecuting officials said to Mayor Flatley: "Tom, they know all about it. You might as well tell them." Appellant took the stand in his own behalf. He testified that he was a close friend of Mayor Flatley; that he was active in Flatley's political campaigns; and that, while admitting receipt of moneys from business men and payments to the mayor, these funds were collected and distributed solely as political contributions without any intent to bribe this city official.

The evidence presented a factual issue for the jury to decide as to whether appellant was guilty of bribery under the statute or whether the funds collected and distributed were given by appellant to Flatley for a lawful purpose.

Appellant claims he was not guilty of bribery as defined in section 911 of the Third Class City Law, as amended, 53 PS §12198-911, even if the Commonwealth's evidence is believed. The section of the law here involved, 53 PS §12198-911, provides: "Any person who shall, directly or indirectly, offer, give, or promise any money or anything of value, testimonial, privilege, or personal advantage to any member of council or other city officer or employe, to influence him in the performance or nonperformance of any of his public or official duties, shall be guilty of bribery, . . ." Appellant contends this act does not cover the present situation, where a defendant gives or delivers money collected from others to a city official to influence him, but that the act only strikes "at the original giver or source of the bribe." Appellant makes reference to the bribery section of the Penal Code of June 24, 1939, P. L. 872, §303, 18 PS §4303, which pro-

hibits "delivery" of any money in order to influence the official action of any officer of the Commonwealth, and argues that the Third Class City Law here involved is not so inclusive. Although penal statutes must be strictly construed, it is clear that the acts of appellant came squarely within the provisions of the statute under which he was indicted. It covers a situation where a person shall "directly or indirectly, offer, give, . . . any money . . . to any . . . city officer or employe, to influence him in the performance or nonperformance of any of his public or official duties, . . ." The fact that appellant, as the giver of the money, was not the "original source" of the bribe is not material. Appellant was shown to have possession of cash funds which he gave to the city official to influence him in the performance or nonperformance of his duties. On such evidence, if credited, appellant clearly violated the provision of the Third Class City Law, relating to bribery of city officials.

Appellant asserts he was deprived of his constitutional guarantee of a fair trial by reason of a hostile atmosphere created by unfavorable publicity in local newspapers, television, and radio, and that the court below erred in refusing a new trial as requested. Appellant filed a motion for continuance, prior to trial, on this ground, and the court below held a hearing on November 11, 1954, at which evidence of newspaper articles, television and radio broadcasts concerning these criminal proceedings was presented at length. After hearing, the court in banc refused appellant's motion for a continuance. Appellant also filed a motion for change of venue; which also was refused by the court below. Appeals from the lower court's refusal to grant a continuance or a change of venue were taken to the Supreme Court of Pennsylvania. On November 15, 1954, the Supreme Court, by its order, de-

nied a general continuance and authorized the district attorney to list the trials for the week of November 29, 1954. The petition for a change of venue, which the district attorney now says he did not oppose, was also refused by the Supreme Court. In refusing a continuance because of alleged unfavorable publicity, the court below stated: "Unquestionably, the public generally knows that what has been termed 'a public scandal' will come to trial in this court to have determined whether or not those charged as participating therein are guilty or innocent. There is no testimony before us to show that the public generally is aroused, prejudiced or incensed in such a way as to deprive any of those under indictment with a fair trial. We do not condone the pre-trial of cases in newspapers or any means or any processes through which information is disseminated with reference thereto, but an examination of approximately forty exhibits showing newspaper publicity involved and a transcript of the testimony given at preliminary hearings which was taken on tape recorder and broadcast via radio and television, shows what took place was factually reported. . . ." Undoubtedly there was widespread local publicity given to criminal proceedings of this nature involving prominent persons. The court found that there was no showing the publicity was prejudicial, and that appellant would not be deprived of a fair trial. The Supreme Court refused a general continuance which was sought on this ground. A second motion for continuance was filed before trial on November 29, 1954, reiterating the alleged prejudice as a result of unfavorable publicity; this petition was likewise refused. The refusal to grant a new trial because of unfavorable publicity in the press and news media is within the sound discretion of the trial court. *Com. v. Grotefend and Haun,* 85 Pa. Superior Ct. 7, 13; *Com. v. Harrison,* 137 Pa.

Superior Ct. 279, 8 A. 2d 733; *Com. v. Valverdi*, 218 Pa. 7, 66 A. 877; *Com. v. Deni*, 317 Pa. 289, 176 A. 919. The record here on appeal does not show that the jurors were prejudiced or that appellant was deprived of a fair trial. There is nothing to indicate that local newspaper reports prejudiced the trial in any way. The trial judge did not abuse his discretion in refusing a further continuance or in refusing a new trial because of alleged unfavorable publicity. See *Com. v. Schultz*, 170 Pa. Superior Ct. 504, 512, 87 A. 2d 69.

Appellant filed motions to quash the indictment on the ground, inter alia, that the conduct of the district attorney and assistant district attorney before the grand jury was prejudicial to appellant. The court granted a rule and heard testimony on the motion to quash. It was alleged that Assistant District Attorney Johnson, though not sworn as a witness, prompted and corrected a witness, Officer Verga, as to names and dates of the payment of bribery money. Further, appellant alleged, and the testimony taken showed, that some of the grand jurors observed a bulge in the hip pocket of Assistant District Attorney Johnson. Upon inquiry by a grand juror as to why Assistant District Attorney Johnson was wearing a gun, he is supposed to have replied that he would "feel naked without it." Mr. Johnson admitted testifying as a witness to the extent of reading the statements of Mayor Flatley and the appellant to the grand jury, but he denied acting in the dual capacity of witness and prosecutor. Mr. Johnson also denied prompting the witness Verga, though he did not deny the alleged conversation with the grand juror relative to carrying a gun concealed in his hip pocket. A majority of the court below refused the motion to quash the indictment. The general rule of secrecy surrounding grand jury proceedings is subject to some exceptions, but an investigation of the

conduct of the prosecuting officer before the grand jury should not be instituted except on a clear showing of irregularity. *Com. v. Smart,* 368 Pa. 630, 636, 84 A. 2d 782. "The function of the prosecuting officer is to attend on the grand jurors with regard to matters on which they are to pass, to aid in the examination of witnesses, and to give such general instructions as they may require, but he must not attempt to influence their action nor indeed should he be present while they are deliberating on the evidence or voting on a matter under investigation: Commonwealth v. Bradney, 126 Pa. 199, 205, 17 A. 600, 601; Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107, 113, 14 A. 2d 907, 910": *Com. v. Smart,* supra, 368 Pa. 630, 634, footnote 3, 84 A. 2d 782, 785.

Appellant's claim that the assistant district attorney acted irregularly and created prejudice by testifying in person and by prompting witnesses, being strongly denied, is not definitely established and the action of the court below in refusing to quash the indictment on this ground must be sustained. In our opinion, appellant has not shown that the conduct of the assistant district attorney before the grand jury relative to carrying a gun was such as to establish prejudice or invalidate the indictment. It does not appear that the grand jurors generally were aware of the gun incident. In view of the nature of grand jury proceedings, prejudice may not be inferred but must be definitely established. "A court should not sustain a motion to quash, based upon allegations of extraneous factors, 'except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights': Com. v. Brownmiller, 141 Pa. Superior Ct. 107, 116, 14 A. 2d 907, citing Com. v. Haines, 57 Pa. Superior Ct. 616, and Com. v. Viscount, 118 Pa. Superior

Ct. 595, 179 A. 858": *Com. v. Gross,* 172 Pa. Superior Ct. 85, 92, 92 A. 2d 251, 254. See, also, *Com. v. Poley,* 173 Pa. Superior Ct. 331, 336, 98 A. 2d 766; *Com. v. Kilgallen,* 175 Pa. Superior Ct. 52, 60, 103 A. 2d 183, reversed on other grounds, 379 Pa. 315, 330, 108 A. 2d 780.

Appellant proceeded to trial on December 8, 1954, with his codefendants, Mayor Thomas W. Flatley and Henry Soscia. These codefendants entered pleas of guilty which were accepted by the court. The jury had not been chosen in appellant's case, and he claims that the acceptance of guilty pleas of the codefendants in open court, in the presence of the panel of prospective jurors, was prejudicial and deprived appellant of a fair trial. After the jury was sworn, counsel for appellant moved to continue the case for this reason. There is nothing to indicate that the panel was aware of the entry of the guilty pleas by the codefendants, nor was prejudice, bias, or improper influence upon the part of any member of the jury in appellant's case established. See *Com. v. Chavis,* 357 Pa. 158, 168, 169, 53 A. 2d 96. Granting or refusing a motion for continuance or for a new trial based upon an allegation that the jury heard matter prejudicial to a defendant is largely within the discretion of the trial judge. *Com. v. Spallone (No. 1),* 154 Pa. Superior Ct. 282, 35 A. 2d 727. In the present case the voir dire examination of the jurors disclosed that none of the seventeen jurors questioned had formed an opinion as to the guilt or innocence of appellant.

The written statements or confessions of appellant and Mayor Flatley, taken prior to trial, were introduced into evidence, over appellant's objection, and read to the jury. Appellant complains that at the close of the trial both statements were sent out with the jury as exhibits. The record does not show that

the statements were sent out, or that counsel for appellant made any objection if this occurred. The point was not raised in the court below. It is settled by a long line of authorities that it is in the discretion of the trial judge as to what papers, properly admitted in evidence, shall go out with the jury. *Com. v. Clark*, 123 Pa. Superior Ct. 277, 290, 187 A. 237; *Quartz v. Pittsburgh*, 340 Pa. 277, 279, 16 A. 2d 400. However, exhibits which are nothing more than depositions and transcripts of oral testimony given at the trial should not be sent out. *Com. v. Clark*, supra, 123 Pa. Superior Ct. 277, 290, 187 A. 237; *Zank v. West Penn Power Company*, 169 Pa. Superior Ct. 164, 167, 82 A. 2d 554. Confessions of an accomplice, admitted in evidence at trial, may be sent out with the jury, over defendant's objection, where the court cautions the jury not to give such confessions undue weight. *Com. v. Murphy*, 92 Pa. Superior Ct. 139. In this respect confessions or admissions are to be distinguished from depositions or transcripts of oral testimony. *Brenner v. Lesher*, 332 Pa. 522, 528, 2 A. 2d 731. In the present case, as stated, the record does not show that the confessions were sent out with the jury as exhibits. Even if they were, appellant did not object or raise the point below. Prejudice may not be presumed and appellant has not shown that he was entitled to a new trial for this alleged reason.

Appellant states the next question as follows: Was the appellant tried at a term of court which was improper and which was not the term to which he had been originally committed by the committing magistrate? Appellant assumes that the magistrate originally, on October 25, 1954, returned appellant's case to the "next term of Court," which would have been the February term; that the magistrate later amended his return to read "the November Term" of court. Tes-

timony on this matter was taken in the court below on the motion to quash the indictment. A careful reading of this testimony does not substantiate appellant's contention. The bond signed by appellant was returnable to the second Monday in November, 1954. At most, the testimony was conflicting as to whether the magistrate amended his return from the "next" to the "November Term" of court then in session. A committing magistrate may bind over a defendant and make return of the proceedings to a term of court then pending; such action is not ground for quashing the indictment; furthermore, the entry of bail by appellant was a waiver of the error, if any. *Com. v. Magid,* 91 Pa. Superior Ct. 513, 515, 516; *Com. v. Gross,* supra, 172 Pa. Superior Ct. 85, 92, 92 A. 2d 251; *Com. v. Poley,* supra, 173 Pa. Superior Ct. 331, 336, 98 A. 2d 766.

There remains the question as to the disqualification of the trial judge. About six months preceding the trial the district attorney and an assistant approached President Judge EVANS, and informed him in a general way that the district attorney's office was making an investigation into charges of widespread bribery in the City of Erie. The district attorney told the judge that the investigation might entail acceptance of marked money given as a bribe, and that the district attorney considered, for the district attorney's own protection, the judge should know this fact. The district attorney furnished the judge with several written reports showing payments of money on various dates to different individuals. President Judge EVANS, the trial judge, stated at a hearing on the motion for continuance that he never read these reports closely, and that he knew nothing beyond the broad fact that an investigation into alleged bribery was in progress. The judge's knowledge of the investigation preceding

the trial was therefore indirect and remote. He disclosed fully the limited extent of his information, and his explanation shows no semblance of prejudice, bias, or adverse interest. A trial judge is not disqualified merely because he has some previous acquaintance with the case. *Com. v. Musto,* 348 Pa. 300, 304, 35 A. 2d 307; *Brown v. Bahl,* 111 Pa. Superior Ct. 598, 602, 170 A. 346, 348. There was no reason for the trial judge to disqualify himself; appellant did not establish any bias or prejudice, upon the part of the trial judge, which would entitle him to a new trial. Cf. *Com. v. Nelson,* 377 Pa. 58, 104 A. 2d 133; *Levine Contempt Case,* 372 Pa.. 612, 618, 95 A. 2d 222.

This case was well and fairly tried. The matters raised on this appeal, separately or collectively, do not require a reversal of the judgment of sentence. The evidence warrants the jury's verdict of guilty. In fact, it would be difficult to justify any other verdict than that reached.

The judgment of sentence is affirmed, and it is ordered that defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence, or any part of it which had not been performed at the time the appeal was made a supersedeas.