J-S67007-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KENNETH J. PINER, | : | |
| | : | |
| Appellant | : | No. 4 WDA 2014 |

Appeal from the Judgment of Sentence June 14, 2013,
Court of Common Pleas, Blair County,
Criminal Division at No(s): CP-07-CR-0000675-2012,
CP-07-CR-0002676-2011, CP-07-CR-0002679-2011,
CP-07-CR-0002680-2011, CP-07-CR-0002681-2011,
CP-07-CR-0002687-2011 and CP-07-CR-0002695-2011

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:           **FILED FEBRUARY 09, 2015**

Appellant, Kenneth J. Piner ("Piner"), appeals from the judgment of sentence entered on June 14, 2013, following his convictions for multiple counts of, inter alia, possession of a controlled substance, 35 P.S. § 780-113(a)(16), possession of a controlled substance with the intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30), conspiracy to deliver a controlled substance, 18 Pa.C.S.A. § 903, criminal use of a communications facility, 18 Pa.C.S.A. § 7512(a), racketeering and corrupt organizations, 18 Pa.C.S.A. § 911(b)(3), conspiracy to violate racketeering and corrupt organizations laws, 18 Pa.C.S.A. § 911(b)(4), and dealing in proceeds of unlawful activities, 18 Pa.C.S.A. § 5111(a)(1).

---

*Former Justice specially assigned to the Superior Court.

After a series of controlled buys of cocaine, on or about November 4, 2011, police arrested Piner and charged him (at six docket numbers[1]) with possession of cocaine, PWID, conspiracy to commit PWID, and criminal use of a communications facility. In or around December 2011, a statewide investigating grand jury began hearing testimony relating to the distribution of cocaine in and around Altoona, Pennsylvania. As a result of the activities of the grand jury, on February 28, 2012, additional drug-related charges, including charges under Pennsylvania's racketeering and corrupt organizations law (18 Pa.C.S.A. § 911), were filed against Piner[2] and thirteen other defendants. The trial court consolidated the charges against Piner at all seven docket numbers for trial.

On September 5, 2012, Piner entered a guilty plea on various of the charges against him at all seven docket numbers. On February 21, 2013, however, Piner filed a motion to withdraw his guilty plea, and on March 7, 2013, approximately two weeks before the scheduled start of trial, the trial court granted Piner's motion to withdraw his guilty plea. A jury trial commenced on March 25, 2013 against Piner and the other defendants charged in connection with the grand jury's activities. Piner testified on his

---

[1] The charges at CR-2676-2011 related to activities on August 11, 2011; at CR-2679-2011 for activities on September 7, 2011; at CR-2680-2011 for activities on June 16, 2011; at CR-2681-2011 for activities on June 23, 2011; at CR-2687-2011 for activities on November 30, 2010; and at CR-2695-2011 for activities on January 14, 2011.

[2] These charges against Piner were filed at docket number CR-675-2012.

own behalf, admitting that he sold cocaine out of the Corner Bar in Altoona, but denying that he was part of any drug trafficking organization. At the conclusion of the eleven-day trial, the jury convicted Piner of the above-listed offenses. The trial court sentenced him to 36 to 72 years of imprisonment.

On appeal,[3] Piner raises seven issues for our consideration and determination:

1.   Did the prosecution, by telling the grand jury [Piner] was "involved in homicides', so contaminate the proceedings so as to warrant dismissal of all the charges issued and directed by the grand jury presentment?

2.   Did the trial court improperly deny [Piner] his requested suppression hearing to contest the unverified <u>consensual</u> phone wiretaps using unreliable confidential informants in the six controlled buy cases?

3.   Was [Piner] unfairly denied a hearing on his requested motion to suppress evidence obtained from his residence improperly by police using search warrants issued without probable cause?

4.   Was the verdict regarding the grand jury corrupt organization-conspiracy charges against the weight of the evidence?

---

[3]   On March 25, 2014, the trial court filed a written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. On October 9, 2014, this Court remanded the case back to the trial court for the preparation of a supplemental Rule 1925(a) opinion with respect to issues 1, 2, 3, 4, and 7. In response, the trial court issued two supplemental Rule 1925(a) opinions, one by the Honorable Judge Timothy M. Sullivan dated November 19, 2014, and the second by the Honorable Judge Daniel J. Milliron dated December 3, 2014.

5.    Was the non-consensual phone tap permission improperly granted by the Superior Court?

6.    Was [Piner] a victim of sentence entrapment or manipulation and therefore entitled to a reduced sentence?

7.    Were [Piner's] due process rights violated by a faulty (unfair) grand jury presentation and failure of the Commonwealth and trial court to ensure that he had his full requested suppression hearings?

Piner's Brief at 27.

For his first issue on appeal, Piner contends that the trial court erred in denying the motion to dismiss the criminal complaint and grand jury presentment he filed four days before the start of trial.  In this motion, Piner requested that the trial court conduct an in camera review of the transcript of the grand jury proceedings to determine whether the charges at docket number at CR-675-2012 should be dismissed as a result of prosecutorial misconduct.   In particular, Piner's motion brought to the trial court's attention statements by the prosecutor to a grand jury witness indicating that Piner and his brother Stephen had been involved in a particular drug-related homicide.[4]   Motion to Dismiss Complaint/Presentment, 3/21/2013, ¶¶ 1-7.

---

[4]  During the grand jury proceedings, the prosecutor asked a witness, "You didn't know they [the Piner brothers] were involved in the homicide of Lisa Snider?  At least that is the word on the street."  Piner's Brief at 37.
*[FOOTNOTE CONT'D]*

The trial court initially deferred a ruling but denied Piner's motion at the conclusion of trial by order dated April 10, 2013. This order is problematic for multiple reasons. First, the trial court denied Piner's motion as untimely because it was not included in an omnibus pretrial statement filed within thirty days of the arraignment, as required by Rule 579 of the Pennsylvania Rules of Criminal Procedure. Trial Court Order, 4/10/2013, at 2. The trial court does not explain its basis for concluding that a motion of the type at issue here (dismissal of criminal complaint or investigating grand jury presentment for prosecutorial misconduct) must be included in an

---

In summarizing the criminal history section of the application for wiretaps submitted to this Court (see *infra* issue five), the trial court offered the following background on this criminal episode:

> Even though the charges of Criminal Homicide and Criminal Conspiracy to Commit Homicide were eventually dismissed, both [Piner] and his brother, Stephen Piner, were implicated in that homicide as well as another homicide, the victims being Julius Jackson and Lisa Snyder. Ms. Snyder was working as a confidential informant for the Altoona Police Department at the time of her demise. Agent Adams testified that even though neither Piner has ever been convicted of either [h]omicide, [] the confidential informants being utilized during the investigation believed that the Piner brothers were involved in these two homicides and that there was, in his words, "street cred" (i.e., credibility) that the Piners were involved in these murders. This belief, fear and/or concern was serving as a deterrent to confidential informants fully cooperating with the police.

Trial Court Opinion, 6/4/2012, at 5.

omnibus pretrial motion (per Pa.R.Crim.P. 578). Moreover, even if applicable, Pa.R.Crim.P. 579 provides that the omnibus pretrial motion must be filed within thirty days of the arraignment "unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion …." Pa.R.Crim.P. 579. Piner contends that the transcript of the grand jury proceedings did not become available to him until after the entry of his guilty plea, and that upon the withdrawal of his plea he promptly filed his motion to dismiss. Piner's Brief at 39. Nothing in the certified record on appeal disputes this contention.

Second, the trial court's April 10 order indicates that the Commonwealth "orally objected to the late filing" of the motion. The certified record, however, contains no evidence of any such objection (or other argument regarding the applicability of Rules 578 and 579). Third, the trial court ruled that Piner had made "similar claims under previous Petitions," and that another judge (the Honorable Timothy M. Sullivan) had denied these claims on substantive grounds in a written decision dated June 4, 2012. While it is true that Piner had previously objected to a reference to a homicide in an affidavit of probable cause submitted to this Court in connection with the issuance of wiretaps (see discussion of issue five *infra*), at no time prior to his March 21, 2013 motion to dismiss had Piner raised any issues with respect to prosecutorial misconduct during grand jury

proceedings.[5]   Judge Sullivan's June 4, 2012 opinion discusses prior allegations of Piner's involvement in homicides in the affidavit of probable cause.  Trial Court Opinion, 6/4/2012, at 5.  It does not, however, reference any statements by the prosecutor to this effect during the grand jury proceedings or consider dismissal of any charges for prosecutorial misconduct.

In its appellate brief, the Commonwealth alternatively cites to **Commonwealth v. Sanchez**, 82 A.3d 943, 985 (Pa. Super. 2013), for the proposition that a conviction after a fair and lawful trial can render moot "a defect in a pretrial proceeding."  Commonwealth's Brief at 18.  The "pretrial proceeding" at issue in **Sanchez**, however, was a preliminary hearing. **Sanchez**, 82 A.3d at 985.  The Commonwealth has not cited to any authority regarding the nullification by trial verdict of allegations of prosecutorial misconduct during grand jury proceedings.  Piner, conversely, has directed us to **Commonwealth v. Smart**, 84 A.2d 782 (Pa. 1951), in which our Supreme Court indicated that "it might be possible to imagine a situation which presented justification, and even necessity, to investigate the acts and conduct of a prosecuting officer during the course of his attendance upon the Grand Jury," upon the presentation of "credible, detailed, sworn

---

[5]   Issues related to "word on the street" about homicides (or threats of homicides) by Piner and his brother also arose during testimony at the April 19, 2012 pretrial hearing regarding Piner's request for reduced bail.  N.T., 4/19/2012, at 21-22.

and persuasive averments by witnesses of the irregularities complained of."

*Id.* at 786. Based upon *Smart*, we decline here to extend the scope of

*Sanchez* to grand jury proceedings.

We need not determine whether any prosecutorial misconduct

occurred during the grand jury proceedings in this case, since even if we

were to find error in the trial court's denial of Piner's motion to dismiss, it

would be harmless.

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Melvin*, 103 A.3d 1 (Pa. Super. 2014) (quoting

*Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002)).

At trial, Piner was not charged with murder and the jury received no

evidence relating to Piner's participation in any murders (including but not

limited to the alleged homicide referenced in the grand jury proceedings).[6]

---

[6] Piner points out that counsel for the Commonwealth referenced the grand jury proceedings during his opening statement to the jury at trial, stating that the "Grand Jury eventually approved the number of charges that are before you, after considering the testimony and the evidence presented by the Commonwealth." N.T., 3/25/2013, at 24. Counsel for the Commonwealth did not, however, reference any murders or testimony about murders. To the contrary, his next statement to the jury was,

Moreover, the properly admitted and uncontradicted evidence of Piner's guilt was overwhelming. The Commonwealth presented the testimony of law enforcement officers, confidential informants, and lay persons regarding the controlled buys in 2010 and 2011, during which Piner sold cocaine to numerous individuals. During his own testimony, Piner admitted that he purchased, repackaged, and sold cocaine. N.T., 4/9/2013, at 4-61. During the investigation of the Corner Bar, law enforcement officers testified that they employed video surveillance, personal surveillance, pen registers to record phone information, confidential informants, and wiretaps. N.T., 3/27/2013, at 161-162. During the investigation, the evidence disclosed that law enforcement officers listened to and monitored a total of 19,217 phone calls and texts messages from the phones of Piner and his brother Stephen, 2,377 of which directly or indirectly referenced drug information or delivery. *Id.* at 137.

With respect to the racketeering and corrupt organizations convictions, the evidence generally showed that Damion Floyd operated a drug trafficking organization from the Corner Bar in Altoona. After his incarceration, Floyd continued to operate the organization from prison, with primary assistance from Jermaine Samuel and Octavius Cooley. Rodney Williams was the source of the cocaine in Baltimore, Maryland, and Shonda Hicks, a bartender

---

"Consequently, you will consider charges that involve a number of controlled purchases from Kenneth Piner." *Id.* We also note that Piner's trial counsel did not object to these remarks.

at the Corner Bar, went to Baltimore on multiple occasions to transport the cocaine to Altoona. Samuel and Cooley then distributed the cocaine to, among others, Piner and his brother Stephen. Regarding Piner's association and participation in the organization, during relevant parts of 2010 and 2011, Piner resided at the Corner Bar. Agent Albert Adams testified that based upon the surveillance of phone calls and texts, Piner, while having a smaller customer base than did his brother Stephen, clearly played a role in the organization. N.T., 3/27.2013, at 146-47, 176. While Piner denied that he ever purchased or received drugs from Samuel, Trooper Craig Grassmyer testified that Piner informed him that he could purchase 18 ounces of cocaine from Samuel "at any time he wanted." N.T., 4/2/2013, at 109-110. During his own testimony, Piner admitted both that he purchased cocaine from Octavious Cooley, a member of the Corner Bar organization, and that he knew the drugs he was purchasing came from Baltimore. N.T., 4/2/2013, at 22, 35-36.

Piner was convicted of a violation of section 911(b)(3) of Pennsylvania's Corrupt Organizations Act, which provides as follows:

**(b) Prohibited activities.--**

> (3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S.A. § 911(b)(4). As set forth herein, the properly admitted and uncontradicted evidence of Piner's association with, and participation in, the Corner Bar enterprise was overwhelming. Accordingly, we conclude that any errors relating to the trial court's denial of Piner's motion to dismiss based upon instances of prosecutorial misconduct during the grand jury proceedings were harmless. Piner is entitled to no relief on his first issue on appeal.

For his second issue on appeal, Piner contends that the trial court improperly denied him a suppression hearing to contest certain consensual phone wiretaps, pursuant to which evidence was gathered in support of the six controlled buy cases (CR-2676-2011, CR-2679-2011, CR-2680-2011, CR-2681-2011, CR-2687-2011, and CR-2695-2011). The trial court and the Commonwealth argue that Piner waived this issue. We agree with Piner that the issue was properly raised and preserved for appeal, but deny relief based upon harmless error.

To recap the relevant facts, on November 4, 2011, the police arrested Piner and charged him with PWID and other drug-related crimes. On November 10, 2011, the police served him with three notices, entitled "Notice of Electronic Wiretapping or Surveillance" forms, informing him that consensual wiretaps, authorized by 18 Pa.C.S.A. § 5704, had been used to gather evidence in connection with the six controlled buy cases. In his Omnibus Pretrial Motion filed at the above-referenced six docket numbers,

Piner sought the suppression of all evidence obtained pursuant to these consensual wiretaps.

## MOTION TO PROVIDE THE BASIS AND AUTHORITY FOR
## THE WIRETAPPING FOR ELECTRONIC SURVEILLANCE

28.

Your Petitioner was provided with Notice of Wiretapping Electronic Surveillance on November 10, 2011 by Detective Sgt. Johannides and Officer Moser of the Altoona Police Department.

29.

Your Petitioner respectfully requests all documentation and authority to form the basis for the electronic surveillance or wiretapping. Your Petitioner believes and wherefore avers that the activities of the Commonwealth were not in accordance with the Wiretapping and Electronic Surveillance Control Act set forth at 18 Pa.C.S. § 5704 nor were they conforming with the strict limitations required by said Act.

WHEREFORE, your Petitioner respectfully requests the suppression of all information seized as a result of the wiretapping and/or electronic surveillance.

Omnibus Pretrial Motion, 2/27/2012, at ¶¶ 28-29. Piner filed his Omnibus Pretrial Statement on February 27, 2012.

The next day, February 28, 2012, the Commonwealth filed the grand jury-related charges against Piner (subsequently docketed at CR-675-2012). Supporting evidence for these new charges had been gathered pursuant to

**non-consensual** wiretaps of telephone calls authorized by this Court pursuant to 18 Pa.C.S.A. § 5710(a).

The trial court conducted an evidentiary hearing on Piner's Omnibus Pretrial Motion on April 19, 2012, at which time the Commonwealth presented witnesses with respect to three issues: delays in scheduling the preliminary hearing, a request for modification of bail, and authorization for non-consensual wiretaps. N.T., 4/19/2012, at 3-4. In its June 4, 2012 opinion, the trial court described the contents of briefs[7] received from counsel for the parties after the April 19 hearing:

> In his one page memorandum, counsel for [Piner] stated the following:
>
>> "In realty [sic], the non-consensual surveillance or interceptions were not conducted during the time frame of the investigation and matters before the Court. No testimony was presented regarding the <u>consensual</u> interceptions. Accordingly, counsel for [Piner] requested suppression of any and all evidence seized as a result of the consensual interceptions" (Emphasis added).
>
> In his one page responsive letter memorandum, [counsel for the Commonwealth] points out that defense counsel did <u>not</u> previously raise an issue relative to the consensual interceptions done in this case, specifically conversations between the CI and [Piner]. As a result, the Commonwealth did not present any testimony as to those matters during our April 19, 2012 hearing.

---

[7] These briefs do not appear in the certified record.

- 13 -

Trial Court Opinion, 6/4/2012, at 2. For these reasons, the trial court rejected Piner's challenge to the consensual wiretaps:

> Based upon our review of the Motion filed on behalf of [Piner], we agree that [Piner] never raised an issue as to the consensual interceptions involving the CI's [sic] and [Piner]. Therefore, the Commonwealth was never put "on notice" that this would be an issue before the court.

*Id.* (emphasis in original). In its supplemental Rule 1925(a) opinion, the trial court determined that Piner had waived his right to a suppression hearing on the consensual wiretaps. Trial Court Opinion, 12/3/14, at 8.

We cannot agree that Piner waived this issue. As set forth above, Piner specifically raised the issue of **consensual** interceptions in paragraphs 28 and 29 of his Omnibus Pretrial Motion. Although these paragraphs do not use the words "consensual interceptions," they clearly refer to them, for at least two reasons. First, paragraph 29 refers to 18 Pa.C.S. § 5704, the applicable statutory provision for consensual wiretaps. *See* 18 Pa.C.S. § 5704(4) ("[A]ll parties to the communication [must] have given prior consent to such interception."). Second, these paragraphs were included in Piner's Omnibus Pretrial Motion filed on February 27, 2012, one day **before** the grand jury related charges against Piner (involving the use of **non-consensual** wiretaps) were even filed. As a result, when the Omnibus Pretrial Motion was filed, the use of non-consensual wiretaps was not yet at

- 14 -

issue in the case, and thus its paragraphs 28 and 29 must refer to, and raise the issue of suppression obtained from, consensual interceptions.

The Commonwealth's introduction of evidence at the April 19 hearing regarding authorization for **non-consensual** wiretaps utilized in the grand jury proceedings was not responsive to the issue of consensual wiretaps raised in paragraphs 28 and 29 of the Omnibus Pretrial Motion. To the extent that there was any confusion on this matter, counsel for Piner clarified this point in his one page memorandum brief filed after the hearing. The Commonwealth did not, however, request another evidentiary hearing to rectify this apparent oversight, and the trial court did not conduct one.[8]

---

[8] On appeal, the Commonwealth contends that Piner waived this issue because at a subsequent evidentiary hearings on April 19, 2012 and June 21, 2012, counsel for Piner stipulated that only a limited number of issues (not including consensual intercepts) remained pending. Our review of these transcripts does not support these contentions. At the April 19, 2012 evidentiary hearing, neither counsel nor the trial court attempted to limit the number of pending issues. Instead, counsel for the Commonwealth merely stated that "The Commonwealth would be prepared to address the preliminary hearing delay, the bail issues raised by Mr. Piner, the authorization for the nonconsensual intercept as well as the need for the extraordinary measure of a non-consensual intercept." N.T., 4/19/2012, at 3-4.

With respect to the June 21, 2012 evidentiary hearing, the Commonwealth asserts that "the trial court and Piner agreed that the only issues before the court were Piner's request to sever the charges and a petition for nominal bail under Pa.R.Crim.P. 600." Commonwealth's Brief at 21. The transcript reflects that counsel for Piner raised the suppression issues, advising the trial court that "Judge Sullivan has rendered a decision based upon the Motion to Suppress that we had filed earlier. So, I'm not going to renew that at this time." N.T., 6/21/2012, at 1.

Although we conclude that the trial court erred in denying Piner's motion to suppress evidence obtained by consensual wiretaps without first receiving evidence of prior consent, we find this to be harmless error. ***See Commonwealth v. Arrington***, 86 A.3d 831, 846-48 (Pa.), *cert. denied sub nom.*, ***Arrington v. Pennsylvania***, 135 S. Ct. 479 (2014) (error in connection with 18 Pa.C.S. § 5704 analysis is subject to harmless error doctrine). In this case, the evidence obtained through the use of consensual wiretaps was merely cumulative of other properly-introduced evidence with substantially similar content. The jury heard testimony from multiple witnesses that Piner sold cocaine in the Altoona area during the time periods relevant to the six controlled buy cases. Among others, confidential informants Michael Lattieri and Robert Cherry testified regarding their controlled purchases from Piner for law enforcement. N.T., 3/25/2013, at 93-129; N.T., 3/26/2013, at 12-163. Sergeant Troy Johannides testified regarding his supervision of Michael Lattieri, N.T., 3/26/2013, at 189-221; N.T., 3/27/2013, at 18-47; N.T., 3/28/2013, at 34-47; N.T., 4/4/2013, at 14-22, and Corporal Christopher Moser testified regarding his supervision of Robert Cherry. N.T., 3/25/2013, at 53-91; N.T., 4/5/2013, at 87-104. Deanna Savino, Greg Conrad and Damien Pierce all testified that they purchased cocaine from Piner. N.T., 3/27/2013, at 29-45; N.T., 3/28/2013, at 75-102; N.T., 4/3/2013, at 60-72. Linda Hartman testified that Piner provided cocaine to people who in turn sold it to her, N.T., 3/28/2013, at

103-107, and Aubrey Moore testified that Piner provided her with cocaine from January 2011 through November 2011 and that she saw Piner sell cocaine to another person. N.T., 4/2/2013, at 3-22. Finally, Piner himself testified that he routinely sold cocaine during the relevant time period, including to Lattieri and Cherry. N.T., 4/8/2013, at 226-231.

For his third issue on appeal, Piner argues that he was denied a hearing on his requested motion to suppress evidence improperly obtained from his residence by police using search warrants issued without probable cause. Piner raised this issue initially in his Omnibus Pretrial Motion. *See* Omnibus Pretrial Motion, 2/27/2012, at ¶¶ 16-21. Similar to issue two discussed hereinabove, the trial court and the Commonwealth contend that Piner waived this issue by not raising it during pretrial proceedings or before trial. Trial Court Opinion, 12/3/2014, at 8-9.

We need not wade through the parties respective waiver arguments again, since even if the issue was adequately preserved for appeal, no relief is due based upon harmless error. On appeal, Piner admits that the only evidence allegedly improperly seized during the service of search warrants at his residence on November 4, 2011 was "a small amount of cocaine" found in one of his pockets. Piner's Brief at 51. Given the substantial volume of evidence introduced at trial regarding Piner's possession and sale of cocaine (including through his own testimony), the disclosure to the jury that he possessed a small amount of cocaine in a pocket at the time of his arrest

was not prejudicial to his defense, or at worst any such prejudice was de minimis.

For his fourth issue on appeal, Piner challenges the weight of the evidence in support of his convictions for violations of Pennsylvania's racketeering and corruption organizations law, 18 Pa.C.S.A. § 911. Our standard of review for weight of the evidence claims is well-settled:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Street***, 69 A.3d 628, 633 (Pa. Super. 2013) (quoting ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007)).

As discussed in detail hereinabove (***see supra*** at pages 9–10), the Commonwealth presented sufficient evidence to establish Piner's association with the drug trafficking organization operated from the Corner Bar in Altoona. Agent Albert Adams testified regarding the surveillance of a substantial volume of phone calls and texts from the phones of Piner and his brother Stephen involving the sale of drugs. N.T., 3/27.2013, at 146-47, 176. While Piner denied that he ever purchased or received drugs from Samuel, a high ranking member of the organization, Trooper Craig Grassmyer testified that Piner informed him that he could purchase 18 ounces of cocaine from Samuel "at any time he wanted." N.T., 4/2/2013, at 109-110. Piner himself admitted that he purchased cocaine from Octavious Cooley, also a member of the Corner Bar organization, and that he knew the drugs he was purchasing came from Baltimore. N.T., 4/2/2013, at 22, 35-36.

Piner contends that the evidence did not demonstrate that he was associated with the Corner Bar organization. Piner argues that it was his brother Stephen who sold drugs as a member of the organization, and that he was only "a small time $50 and $100 seller of drugs to local addicts like himself." Piner's Brief at 58. At trial, however, the Commonwealth introduced substantial evidence of Piner's association

with the Corner Bar operation, including his cooperation with his brother's activities. Agent Adams testified:

> Q. As far as Stephen Piner's role in the organization as opposed to that of Kenneth Piner[,] what does that suggest?
>
> A. That Kenneth was a little [sic] selling less drugs or at a little bit lower level than what Stephen Piner was.
>
> Q. Does that say he's not involved?
>
> A. No.
>
> \* \* \*
>
> A. I stated that they had separate distribution groups, that they didn't always overlap but independent they crossed over here and there. Through this investigation, you had at times Kenneth Piner helping or going to Stephen or Stephen going to Kenneth. I recall one instance where Stephen gave Kenneth some drugs to get back on his feet, sell, and distribute it. So although they had their distribution groups, they still communicated and worked a little bit together.

N.T., 3/27/2013, at 146, 176.

Based upon our review of the certified record, we conclude that the Commonwealth introduced sufficient evidence to permit the jury to return a verdict of guilty on the racketeering and corrupt organizations counts, and the jury's verdict is not so contrary to the evidence as to shock one's sense of justice. The trial court did not abuse its discretion in denying Piner's post-sentence motion on this issue.

For his fifth issue on appeal, Piner contends that the trial court erred in refusing to suppress evidence obtained by non-consensual phone wiretaps granted by this Court. On September 14, 2011, then-President Judge (now Justice) Correale Stevens of this Court entered an order authorizing certain wire and electronic communications by the Pennsylvania Office of Attorney General, the Bureau of Narcotics, Investigations and Drug Control, and the Blair County Drug Task Force. The order included a finding that Piner (among others) were violating (and would continue to violate) Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101 et seq. President Judge Stevens entered the order after receipt and consideration of an application filed by the Pennsylvania Attorney General, which included, inter alia, affidavits signed by Agent Albert Adams and Agent Andrew Sprout. In his June 4, 2012 opinion, Judge Sullivan rejected a suppression motion by Piner, concluding that the Commonwealth had complied with the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701 et seq., and that there was sufficient probable cause for President Judge Stevens to enter the September 14, 2011 order. Trial Court Opinion, 6/4/2012, at 6.

Our well-settled standard of review of the denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the

- 21 -

suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Garibay*, 2014 WL 6910879, at *2 (Pa. Super. December 9, 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)).

Authorizations for wiretaps under the Wiretapping and Electronic Surveillance Control Act must be instituted by the filing of an application containing one or more sworn statements by investigative or law enforcement officers who have knowledge of relevant information justifying the application. The sworn statements must include "a particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or are too

dangerous to employ." 18 Pa.C.S.A. § 5709(3)(vii). Before a judge[9] may issue an order authorizing an interception, the judge is required to determine on the basis of the facts submitted in the application that there is probable cause pursuant to section 5710(a):

**§ 5710. Grounds for entry of order**

**(a) Application.--**Upon consideration of an application, the judge may enter an ex parte order, as requested or as modified, authorizing the interception of wire, electronic or oral communications anywhere within the Commonwealth, if the judge determines on the basis of the facts submitted by the applicant that there is probable cause for belief that all the following conditions exist:

(1) the person whose communications are to be intercepted is committing, has or had committed or is about to commit an offense as provided in section 5708 (relating to order authorizing interception of wire, electronic or oral communications);

(2) particular communications concerning such offense may be obtained through such interception;

(3) normal investigative procedures with respect to such offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ;

(4) the facility from which, or the place where, the wire, electronic or oral communications are to be intercepted, is, has been, or is about to be used, in connection with the commission of such

---

[9] Pursuant to 18 Pa.C.S.A. § 5702, the term "judge" under the Wiretapping and Electronic Surveillance Control Act refers to a member of this Court. 18 Pa.C.S.A. § 5702

offense, or is leased to, listed in the name of, or commonly used by, such person;

(5) the investigative or law enforcement officers or agency to be authorized to intercept the wire, electronic or oral communications are qualified by training and experience to execute the interception sought, and are certified under section 5724 (relating to training); and

(6) in the case of an application, other than a renewal or extension, for an order to intercept a communication of a person or on a facility which was the subject of a previous order authorizing interception, the application is based upon new evidence or information different from and in addition to the evidence or information offered to support the prior order, regardless of whether such evidence was derived from prior interceptions or from other sources.

18 Pa.C.S.A. § 5710(a).

"The standard for determining whether probable cause existed for an order authorizing interception of telephone communications is the same as that used to determine probable cause for search warrants." ***Commonwealth v. Birdseye***, 637 A.2d 1036, 1041 (Pa. Super. 1994), *affirmed*, 670 A.2d 1124 (Pa. 1996)). The question of whether probable cause exists for a wiretap

> must be adjudged by the totality of the circumstances. Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court ... the task of [the trial court] is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons

> supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Thus, the totality of the circumstances test permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip[.]

*Commonwealth v. Burgos*, 64 A.3d 641, 655-56 (Pa. Super 2013) (quoting *Commonwealth v. Torres*, 764 A.2d 532, 537–38 (Pa. 2001)), *appeal denied*, 77 A.3d 635 (Pa. 2013).

On appeal, Piner contends that the Commonwealth failed to satisfy the requirements of 18 Pa.C.S.A. § 5710(a)(3), since before obtaining the wiretap authorization "the police had already collected enough information to successfully conclude their investigation and arrest any guilty parties." Piner's Brief at 60. Piner argues that normal investigative techniques such as controlled buys, confidential informants, and pen registers had already provided sufficient evidence, and thus the requested grand jury investigation wiretap was unnecessary. *Id.* at 60-61.

This Court has addressed the "normal investigative procedures requirement" as follows:

> [T]he standard imposed by the Pennsylvania legislature is … designed to guarantee that wiretapping will not be resorted to in situations where traditional investigative techniques are adequate to expose crime. The requirement also suggests that a wiretap should not be employed as the initial step in a police investigation.

> However, the Commonwealth is not required to show that all other investigative methods have been exhausted. In making this determination, moreover, the issuing authority may consider and rely upon the opinions of police experts. In reviewing the adequacy of the application to support the issuance of an order of authorization, we will interpret the application in a common sense manner, not overly technical, with due deference to the findings of the issuing authority.

*Commonwealth v. Rodgers*, 897 A.2d 1253, 1259-60 (Pa. Super 2006) (quoting *Commonwealth v. Doty*, 498 A.2d 870, 880–81 (Pa. Super. 1985)).

Judge Sullivan found that the affidavits submitted in support of the application here set forth an adequate basis to support the need for the requested wiretaps. Trial Court Opinion, 6/4/2012, at 4. The certified record on appeal supports this determination. While the application and affidavits submitted to President Judge Stevens and later reviewed by Judge Sullivan are not included in the certified record,[10] Agent Adams testified regarding their contents at some length during the evidentiary hearing on April 19, 2012. At that time, Agent Adams explained that wiretaps for the telephones of Piner and his brother Stephen were necessary to learn the identity of those who supplied them with cocaine,

---

[10] To the extent that this omission hinders our appellate review, Piner must bear responsibility. "It is the obligation of the appellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Lundy v. Manchel*, 865 A.2d 850, 855 (Pa. Super. 2004) (quoting *Hrinkevich v. Hrinkevich*, 676 A.2d 237, 240 (Pa. Super. 1996)).

those who purchased cocaine from them, how the cocaine and cocaine base was packaged, where the proceeds and cocaine base were secreted, and the identities of conspirators and their roles in the organization. N.T., 4/19/2012, at 48-55. Agent Adams also explained that other investigative techniques had been employed, including the use of confidential informants, video surveillance, surveillance by officers, and pen registers (which do not capture the contents of calls), but were unlikely to uncover the necessary information. *Id.* Agent Adams indicated that the Piner brothers had been investigated for cocaine distribution in the past, and their knowledge of traditional investigative techniques (and how to minimize their effectiveness) further necessitated the need for the wiretaps. *Id.*

For these reasons, we conclude that the trial court did not err with respect to Piner's fifth issue on appeal. No relief is due.

For his sixth issue on appeal, Piner asserts that the Commonwealth was guilty of "sentencing enhancement," since while he admitted to participating in routine sales of cocaine, he was instead unfairly portrayed as an integral part of a major distribution organization. Piner's Brief at 62. This Court adopted the equitable doctrine of sentencing enhancement in *Commonwealth v. Petrol*, 701 A.2d 363 (Pa. Super. 1977), pursuant to which a defendant may be entitled to a departure from sentencing guidelines upon a showing that

his or her due process rights were violated. *Id.* at 366. Here Piner argues that while he admitted to being predisposed to minor drug sales, the Commonwealth entrapped him into committing greater offenses to subject him to greater punishment. Piner's Brief at 62.

We need not consider the merits of Piner's due process contentions. A claim of sentencing entrapment implicates the discretionary aspect of sentence. *See, e.g.*, *Commonwealth v. Pardo*, 35 A.3d 1222, 1231 (Pa. Super. 2011). Because Piner failed to include the required Pa.R.A.P. 2119(f) statement in his appellate brief and the Commonwealth has objected to its omission, Commonwealth's Brief at 37, this claim is waived. *Pardo*, 35 A.3d at 1231.

For his final issue on appeal, Piner argues that the above-discussed alleged prosecutorial misconduct during the grand jury proceedings, and the trial court's errors in connection with his suppression motions, both constituted violations of his constitutional rights to due process. As set forth hereinabove, however, we have concluded that Piner is not entitled to any relief on these issues. Accordingly, for the same reasons we likewise conclude that no relief is due on this issue.

Judgment of sentence affirmed.

Mundy, J. joins the Memorandum.

Fitzgerald, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/9/2015